CIVIL ACTION NO. 09-97-GWU

CONNIE SUE PELFREY,                                                         PLAINTIFF,

VS.                                    **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                        DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity?
      If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful
      activity, does he have any "severe" impairment or combination
      of impairments--i.e., any impairments significantly limiting his
      physical or mental ability to do basic work activities?  If not, a
      finding of non-disability is made and the claim is denied.

3.    The third step requires the Commissioner to determine
      whether the claimant's severe impairment(s) or combination of

impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.

1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir.

1997).

        Review of the Commissioner's decision is limited in scope to determining

whether the findings of fact made are supported by substantial evidence.  Jones v.

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir.

1991).  This "substantial evidence" is "such evidence as a reasonable mind shall

accept as adequate to support a conclusion;" it is based on the record as a whole

and must take into account whatever in the record fairly detracts from its weight.

Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting

most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Connie Sue Pelfrey, filed applications for DIB and SSI on February 27, 2007, alleging disability due to a diagnosis of breast cancer for which she was undergoing chemotherapy.  (Tr. 143, 145).  After her applications were denied initially and upon reconsideration, she requested and received a hearing before an Administrative Law Judge (ALJ).  The ALJ determined that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable "severe" impairment (Tr. 11), thus terminating the sequential process at Step 2.  In the alternative, even accepting the restrictions given by one of the plaintiff's treating sources, Dr. Mary Legenza, the ALJ concluded that the plaintiff would be capable of returning to her past relevant work as a clinic clerk.  (Tr. 14). In either case, she was found to be "not disabled."  (Tr. 15).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

In the Sixth Circuit, the Step 2 severity regulation has been held to be a de minimis hurdle in the disability determination process.  Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986).  An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience."  Farris v. Secretary of Health

and Human Services, 773 F.2d 85, 90 (6th Cir. 1985).  Essentially, the severity requirements may be used to weed out claims that are "totally groundless."  Id., n.1.

The plaintiff testified, and the evidence showed, that she had stopped work on October 27, 2006, and underwent surgery for a mass in the right breast on November 9, 2006.  (Tr. 24, 323).  Following the surgery, there was an extensive course of chemotherapy, followed by radiation in the summer of 2007.  (Tr. 345-7, 385, 388-91).  Mrs. Pelfrey also had complaints of anxiety and depression during her treatment, for which she was given medication for a time.  (E.g., Tr. 346, 389).  She was apparently not referred for mental health counseling.  Another complaint was numbness and sometimes pain in the fingers and arms.  (Tr. 391, 417).

A neurologist, Dr. Wilma Castro, evaluated the latter problem beginning in October, 2007 and noted diminished muscle strength in the upper extremities and diminished sensation to pinprick in the right C5-C6 dermatome.  (Tr. 417).[1]  An EMG/NCV test showed mild bilateral carpal tunnel syndrome, mild right ulnar sensory neuropathy, left radial sensory neuropathy distally and probable left C5-C6 chronic radiculopathy.  (Tr. 416, 424-5).  An MRI of the cervical spine showed moderately extensive cervical spondylosis, most severely at C5-C6, with nerve root sleeve distortion on the left and possibly on the right.  (Tr. 426-7, 451-2).  Dr. Castro

---

[1] The plaintiff was referred to Dr. Castro by a cardiologist, Dr. Roger Klein, who had evaluated the plaintiff's complaints of left arm pain but determined that they were not cardiac in origin.  (Tr. 497-502).

listed an impression of arm pain, likely related to radiculopathy, and prescribed physical therapy, the medication Lyrica, and oral vitamin B-12 supplements. (Tr. 416).

In terms of functional restrictions, state agency psychologists opined in April and July of 2007 that Mrs. Pelfrey did not have a "severe" mental impairment. (Tr. 360, 399). One of the psychologists, Dr. Ilze Sillers, noted that she had been diagnosed with depression and anxiety by an oncologist, and was taking Xanax. (Tr. 372). However, Dr. Sillers related that she had spoken to the plaintiff by telephone, and that Mrs. Pelfrey reported her depression and anxiety were directly related to her physical condition and worry that surrounded her then continuing cancer treatment. (Id.). Dr. Sillers noted that there were no treating or examining source opinions to consider, and, while she considered the plaintiff's allegations to be partially credible, the psychologist concluded that her anxiety and depression would not interfere with the mental demands of a routine work setting. (Id.). The plaintiff does not appear to challenge this conclusion on appeal.

Physical conditions were assessed by state agency reviewers, also in April and July, 2007. Dr. Jorge Baez-Garcia opined that the plaintiff's condition should resolve within 12 months and result in a finding of no "severe" impairment. (Tr. 374). Dr. John Rawlings, three months later, considered updated records showing that the plaintiff had completed her chemotherapy in the first week of June, was tolerating radiation treatment well, and had gained weight. (Tr. 415). He affirmed

9

the previous assessment that the condition would be non-severe within 12 months of onset.  (Id.).

Subsequently, opinions were given from examining sources.

Dr. Mary Legenza, who had performed the plaintiff's surgery (Tr. 256) and who had also placed a port for chemotherapy (Tr. 334), submitted an assessment form dated September 15, 2008, well over 12 months after the surgery, indicating that the plaintiff had medically determinable impairments of a Stage III poorly differentiated adenocarcinoma and invasive ductal carcinoma, anxiety, and depression.  (Tr. 514).[2]  She completed a specific functional capacity assessment limiting the plaintiff to lifting less than 20 pounds, never crawling, occasionally climbing, balancing, stooping, crouching, and kneeling, and having restrictions on reaching, pushing, pulling, and working around moving machinery and temperature extremes.  (Tr. 516-17).

Dr. Ira Potter performed a consultative physical examination of the plaintiff on September 16, 2008.  He had no medical records available for review, but his examination showed severe tenderness to palpation of the right axillae, right shoulder tenderness with a severe generalized decreased range of motion, and severe pain with the motion of the right glenohumeral joint.  (Tr. 527-8).  The mental

---

[2]The physician checked boxes indicating both that these conditions would disable the plaintiff from substantial gainful activity and also that she could not determine whether the conditions would be disabling.  (Tr. 514).

status examination was normal.  Dr. Potter indicated that the plaintiff would be limited to lifting a maximum of 10 pounds frequently and 5 pounds occasionally, standing and walking a maximum of three hours in an eight-hour day (no more than one hour without interruption), sitting three hours (no more than 40 minutes without interruption), never climbing, crouching, or crawling, occasionally balancing, stooping, and kneeling, and having restrictions on pushing and pulling.  (Tr. 535-6).

The ALJ stated in his opinion that, while Dr. Legenza was a treating source in terms of conducting surgery and post-operative visits, she was not qualified to give limitations on the plaintiff's ability to function in a work setting.  (Tr. 14).  The ALJ stated that Dr. Potter was a one-time examiner and "[t]herefore, his assessment is questionable as he is not a regular treating physician."  The ALJ rejected both of the assessments.

In view of the extensive objective findings of physical abnormalities, including carpal tunnel syndrome, pain, tenderness, and decreased range of motion on examination, coupled with the conclusions of two examining physicians that the plaintiff did have functional restrictions, it was error for the ALJ to accept the opinions of the non-examiners that Mrs. Pelfrey did not have a "severe" impairment.[3]

_____

[3]Social Security Ruling 96-6p provides that the opinions of state agency non-examiners may be accepted over that of examiners under certain circumstances, as when their opinions are based on a review of the complete case record that includes a medical report from a specialist in the individual's particular impairment which provides

This finding is of little assistance to the plaintiff, however.  She argues that the ALJ erred in rejecting Dr. Legenza's opinion as a treating physician.  As previously noted, Dr. Legenza's restrictions were provided to the VE, who testified not only that there were jobs the plaintiff could perform, but that she could actually return to her past relevant work.  (Tr. 44-5).  Therefore, the ALJ's finding regarding the lack of "severe" impairments was harmless error, since the ALJ could reasonably have accepted Dr. Leganza's assessment (as the plaintiff urges) and terminated the sequential evaluation at Step 4.  The plaintiff did not carry her burden of showing she could not return to her past relevant work.

The decision will be affirmed.

This the 10th day of May, 2010.

**Signed By:**

**_G. Wix Unthank_**

**United States Senior Judge**

---

more detailed and comprehensive information than was available to the treating sources. Id. at 3, quoted in Rogers v. Commissioner of Social Security, 486 F.3d 234, 245 n. 4 (6th Cir. 2007).